IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CRAIG A. WEBLEY,                              )
                                             )
                    Plaintiff,               )        Civil Case No. 07-211-KI
                                             )
          vs.                                )        OPINION AND ORDER
                                             )
MICHAEL J. ASTRUE,                           )
COMMISSIONER of Social Security,             )
                                             )
                    Defendant.               )
_____             )

          Richard A. Sly
          1001 SW 5th Avenue, Suite 310
          Portland, Oregon  97204

          Linda Ziskin
          3 Monroe Parkway, Suite P, PMB #323
          Lake Oswego, Oregon  97035

                    Attorneys for Plaintiff

          Karin J. Immergut
          United States Attorney
          District of Oregon

Page 1 - OPINION AND ORDER

Britannia I. Hobbs
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

Nancy A. Mishalanie
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

       Attorneys for Defendant


KING, Judge:

Plaintiff Craig Webley brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I affirm

the decision of the Commissioner.

## BACKGROUND

Webley filed an application for DIB on June 25, 2003, alleging disability as of August 30,

2001.  His date last insured was December 31, 2004.  Webley's previous application for DIB was

denied, and that decision was upheld by the Appeals Council and the United State District

Court,[1] limiting his period of disability to a time after August 30, 2001.  The application at issue

here was denied initially and upon reconsideration.  After a timely request for a hearing, Webley,

represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on

December 15, 2005.

_____

[1]No copy of the United States District Court's opinion has been included in the record
and I have been unable to find it.

Page 2 - OPINION AND ORDER

On February 10, 2006, the ALJ issued a decision finding that Webley was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the

claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

Page 4 - OPINION AND ORDER

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion.  It is more than a scintilla, but less than a preponderance, of the evidence.  Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision.  Id.  The court must weigh both the evidence that supports and detracts from the Commissioner's decision.  Id.  The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner.  Id. at 720-21.

## FACTS

I.    Webley's History

Webley was 62 years old at the time of his hearing before the ALJ.  He alleges disability due to chronic fatigue syndrome, cognitive disorder, and degenerative disc disease of the cervical spine.

Webley has been seeking treatment for his fatigue since at least 1992.  John Wendt, M.D., examined plaintiff and suggested the possibility of multiple sclerosis or migraines.  An MRI of his head and cervical spine showed some abnormalities.  The MRI of his head disclosed small white matter.  The cervical MRI showed mild and moderate abnormalities, including mild to moderate central spinal stenosis at C4-5, foraminal encroachment that was moderate on the right side and mild to moderate on the left side, and a suggestion of edema or gliosis in the spinal cord.

Webley was terminated from his position as a salesman in May 1999, after working almost nine years for the manufacturing company, due to loss of memory, difficulty with making decisions, and difficulty focusing on job assignments.

DDS doctors opined in October 1999 that Webley "Often" suffered from "Deficiencies of Concentration, Persistence or Pace Resulting in Failure to Complete Tasks in a Timely Manner" and "Moderately Limited" in his "ability to maintain attention and concentration for extended periods." Tr. 621, 623. He was also "Moderately Limited" in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 624.

Webley undertook a memory assessment in October of 1999 conducted by Majid Azzedine, Ph.D. Dr. Azzedine noted Webley's "performance remained superior across task domains and regardless of the order of presentation" even though it became "apparent to him that the tasks he was asked to perform were not capturing the cognitive difficulties he had described." Tr. 168. His intellectual functioning was at the high average range. His overall memory score was in the very superior range. Dr. Azzedine noted Webley may have performed well, in part, due to the structured nature of the tests, but his "superior performance could not be attributed solely to the high structure[d] nature of the tasks and the standard testing situation. His superior performances do not suggest vulnerable attention and memory functions." Tr. 170. She assigned a Global Assessment of Functioning (GAF) at 60.[2] She noted his schedule of sleeping six hours

_____

[2]A score of 60 means that an individual has "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or coworkers)." Am. Psychiatric

on average a night, spending his days sorting through his incapacitated mother's memorabilia, researching his condition, commercial art, and other topics on the Internet, minimal housekeeping, and taking an afternoon nap of between 15 and 20 minutes, but no more than 1 hour.

Webley applied for DIB in March 2000, and an unfavorable decision was issued August 29, 2001. At the hearing, a medical expert testified plaintiff's affective disorder (characterized by a disturbance of mood) or somatoform disorder "come close to meeting the listings for medical equivalen[ce.]" Tr. 398. The unfavorable decision was upheld by the United States District Court.

In April, 2000, J. Gary Trantham, M.D., assigned Webley a GAF of 42.[3]

Also in April, 2000, plaintiff underwent a neuropsychological examination, at the request of Dr. Azzedine. The testing revealed, again, that his intellectual functioning was in the superior range, but it also showed "deficits in information processing speed and social perceptions." Tr. 179. T.K. Green, Ph.D., diagnosed mild neurocognitive disorder, mild neuropsychological impairment, attention deficit disorder/hyperactivity disorder, dysthymia - reactive depression, anxiety disorder NOS, and assessed a GAF of 55.[4]

_____

Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV).

[3]A GAF score of 42 means that an individual has "any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." DSM-IV at 34.

[4]A GAF score of 55 indicates that an individual has "[m]oderate symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM-IV at 34.

In June, 2001, Mona Harrison, M.D., noted "pathology" on the "cervical spine sufficient to cause the pain and headaches described by" Webley.  Tr. 688.  She noted Webley's "comprehension and short term memory is affected by anxiety, fear and financial stresses."  Id. Accompanying her evaluation, Dr. Harrison noted, "There is definitely something wrong and [sic] changed his ability to function at work."  Tr. 684.

Webley's physician, Richard Carpenter, D.O., who had been treating Webley since 1990, reported that Webley has suffered from fatigue and memory problems as long as Dr. Carpenter had been treating him.  On October 22, 2001, he opined that Webley would be unable to perform a sales job, but "probably could do a sitting job that involved mainly phone work," although he thought Webley might be unable to learn how to use a computer.  Tr. 224-25.

On July 15, 2003, Webley was interviewed by consulting psychologist, Cheryl Brischetto, Ph.D.  She diagnosed depressive disorder NOS, rule out attention deficit disorder in adulthood and rule out cognitive disorder NOS.  She assessed his GAF at 61.[5]  She questioned Webley about how he spends his day.  He told her he gets up between 7 and 9 a.m., cooks a meal, does laundry and dishes, and spends a couple of hours a day on the computer doing research for "things related to my condition."  Tr. 258.  He reported his "tendency to procrastinate has always been very powerful in his life."  Tr. 256.

After the ALJ's decision, Webley was evaluated by Julia Wong-Ngan, Ph.D.  She commented on his superior intelligence, normal problem solving and deductive reasoning, average attention and concentration, but inconsistent results on learning and memory.  She

---

[5]A GAF of 61 indicates "some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships."  DSM-IV at 34.

opined that his cognitive deficits would not preclude employment. She mentioned that his chronic fatigue and physical symptoms might impose limitations for employment, but she would defer to a medical doctor on that consideration. She diagnosed cognitive disorder NOS, adjustment disorder with depressive and anxious features, and assigned a GAF of 55.[6]

II.    The ALJ's Decision

The ALJ found that plaintiff had impairments considered severe within the meaning of 20 C.F.R. § 404.1520(b). Specifically, he found Webley suffered from degenerative disc disease of the cervical spine, chronic fatigue, attention deficit hyperactivity disorder, depression, rule out cognitive disorder, NOS, anxiety, and a somatoform disorder. The ALJ did not find that these impairments met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

The ALJ concluded that "there is no convincing . . . evidence that the claimant is worse off than he was in 2001, when he was denied benefits by Judge Alexis. He is a few years older but there is no indication that his condition is more dire and the claimant provides no basis for any additional limitations." Tr. 24.

Accordingly, the ALJ found Webley could perform light exertional work involving lifting and carrying of twenty pounds on an occasional basis and ten pounds on a frequent basis, standing and walking for four hours in an eight hour workday, sitting for six hours in an eight hour workday and the limitation of avoiding concentrated exposure to hazards.

_____

[6]Plaintiff makes no argument that this medical evaluation constitutes "new evidence which is material" evidence. 42 U.S.C. § 405(g). I see no reason why this opinion would change the ALJ's decision.

Based on this residual functional capacity, and the testimony of the vocational expert ("VE"), the ALJ concluded that Webley could perform his past relevant work as a salesman. Alternatively, the ALJ found Webley had transferable skills to other sales jobs and could work as a sales representative of industrial machinery, a light, semi-skilled job. Accordingly, the ALJ found that plaintiff was not under a "disability" within the meaning of the Social Security Act, at any time through his date last insured.

## DISCUSSION

I.    Complete Record

Initially, plaintiff argued that the decision needed to be remanded because the Commissioner failed to submit to the Court the record from the previous decision. The Commissioner subsequently located a copy of the file and submitted it. The plaintiff now argues that the case should be remanded because although the ALJ had the whole record from the previous case, he "failed to see" evidence such as Dr. Harrison's opinion that, "There is definitely something wrong and [sic] changed his ability to function at work," and the testimony of the Medical Expert suggesting plaintiff's limitations equal a listing. Tr. 684.

The file from the previous proceeding was made a part of the record. The ALJ told plaintiff's attorney that if there was something in that record that was applicable, the attorney needed to identify it because the ALJ was not going to reconsider the findings of the unfavorable decision that had been affirmed by the District Court. The previous ALJ in issuing an unfavorable decision on August 29, 2001, considered the materials identified by Webley here, and the ALJ "may apply res judicata to bar reconsideration of a period with respect to which he

has already made a determination, by declining to reopen the prior application." Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995). The ALJ has done so here. There is no error.

II.      Listing Decision

Plaintiff contests the ALJ's finding that his combined impairments "do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4." Tr. 26.

Webley bears the burden of proving that he has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). He states, without citation to the record, that Dr. Trantham's chart notes discuss somatization and that, therefore, plaintiff's impairment meets or equals the listing for somatoform disorder. He also relies on the testimony offered by the medical expert at the previous hearing, in which the medical expert testified plaintiff's affective disorder (characterized by a disturbance of mood) or somatoform disorder "come close to meeting the listings for medical equivalen[ce.]" Tr. 398.

The ALJ discussed the "B" criteria that apply to the somatoform listing, finding specifically that plaintiff did not meet or equal the criteria of marked restriction of activities in daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, or repeated episodes of decompensation, each of extended duration. As the ALJ explained, Webley is able to do his own cooking and chores, manages his own money, uses a phone, drives a car, showers every other day, and dresses every day. Dr. Brischetto noted he did not appear depressed and gave him a GAF of 61, indicating that he was functioning pretty well. Dr. Azzendine gave a GAF of 60, and Dr. Green a GAF of 55,

indicating some moderate difficulties in social functioning.[7]    The medical expert testified in the previous proceeding only that Webley's symptoms "come close" to meeting the listings. Accordingly, Webley points to no evidence in the record that would support a finding that his somatoform disorder meets or equals the listing.  As a result, plaintiff failed to meet his burden, and I find the ALJ did not err in his conclusion.

III.    Webley's Credibility

Webley argues that the ALJ failed to make explicit credibility findings, and failed to properly discredit his testimony about the pressure he experienced in his neck and his feeling of fatigue.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom.  The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  Id. at 1282.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ

[7]I discuss Dr. Trantham's GAF score below.

makes specific findings stating clear and convincing reasons for the rejection, including which

testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

Contrary to Webley's assertion, the ALJ's credibility findings are "sufficiently specific to

permit" this court "to conclude that the ALJ did not arbitrarily discredit the claimant's

testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ states specifically that

he did not find plaintiff's "allegations" to be credible for the reasons indicated in the decision.

He stated that while the medical evidence shows degenerative disc disease, Webley "did not

report much problem with this except some pain and pressure in the neck." Tr. 23. Although

Webley takes issue with this statement, asserting that the ALJ did not address the fatigue Webley

experienced as a result of the neck pressure, the ALJ did discuss the limitations associated with

the neck pressure. The medical record and Webley's testimony reflect that his neck pressure was

associated with an increase in stress level and a decreased ability to think or remember. He

testified to being mentally tired as a result of his neck pressure. Tr. 324. The ALJ, however,

noted that Webley tested very well, and did not appear to have functional limitations in

concentrating and focusing. Several doctors reported that Webley spent several hours on the

computer every day, researching his conditions, art, or current events. Tr. 168, 258.

The ALJ also addressed Webley's assertions of physical fatigue, noting the number of

activities in which plaintiff takes part that directly undermine his complaints, and pointing out

there is little evidence in the record of any limitations as a result of fatigue.[8] As I noted above,

the ALJ concluded that Webley's assertions of fatigue were not credible given that Webley takes

---

[8]Plaintiff misinterprets the ALJ's opinion, reading it to say that plaintiff did not report problems with fatigue. I read the opinion to say there is little support in the record that plaintiff experienced difficulties as a result of the fatigue he reported.

Page 13 - OPINION AND ORDER

trips, drives without problems, takes care of his daily needs, manages his finances, drove a

moving truck from Seattle to Portland when he moved in 2002, and spends several hours a day

on the Internet.

In sum, the ALJ provided clear and convincing evidence for rejecting the subjective

testimony of Webley.

IV.    Medical Opinions

Plaintiff takes issue with the ALJ's failure to include Dr. Trantham's rating of plaintiff's

GAF at 42, the ALJ's failure to include the DDS assessments of plaintiff's mental limitations,

and the ALJ's rejection of Dr. Carpenter's opinion.

The weight given to the opinion of a physician depends on whether the physician is a

treating physician, an examining physician, or a nonexamining physician.  Lester v. Chater, 81

F.3d 821, 830 (9th Cir. 1996).  More weight is given to the opinion of a treating physician

because the person has a greater opportunity to know and observe the patient as an individual.

Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  If a treating or examining physician's

opinion is not contradicted by another physician, the ALJ may only reject it for clear and

convincing reasons.  Even if it is contradicted by another physician, the ALJ may not reject the

opinion without providing specific and legitimate reasons supported by substantial evidence in

the record.  Lester, 81 F.3d at 830.  The opinion of a nonexamining physician, by itself, is

insufficient to constitute substantial evidence to reject the opinion of a treating or examining

physician.  Id. at 831.  Opinions of a nonexamining, testifying medical advisor may serve as

substantial evidence when they are supported by other evidence in the record and are consistent

with it.  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

      A.    Dr. Trantham

      The ALJ did not include Dr. Trantham's opinion that Webley's GAF was 42 during their first meeting in April of 2000.  He did not assign a GAF after that time.  I find the error to be harmless.  An ALJ need only discuss "significant probative evidence[.]"  Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Dr. Trantham's assessment was made prior to the first unfavorable decision, and therefore prior to the period of disability at issue here, which is August 30, 2001.  The first ALJ's opinion addressed the time period in which Dr. Trantham made his opinion, and that unfavorable decision was upheld by the United States District Court.  Dr. Trantham's opinion was not significant or probative of the period at issue here.  I note, too, that the same month Dr. Green identified plaintiff's GAF as 55.

      B.    DDS Physician

      Similarly, the ALJ neglected to discuss the DDS doctor's opinion that plaintiff would "Often" experience "Deficiencies of Concentration, Persistence or Pace Resulting in Failure to Complete Tasks in a Timely Manner (in work setting or elsewhere)."  Tr. 621.  Plaintiff suggests that cases from this Court support a remand for a finding of disability based on this opinion alone.  See Dade v. Apfel, No. CIV 99-6032-KI, 1999 WL 1192727 (D. Or. Dec. 15, 1999) (opinion that plaintiff often has deficiencies of concentration, combined with VE testimony that this limitation is sufficient to result in unemployability, was sufficient for remand for finding of disability).

The DDS doctor gave this opinion in 1999, prior to the period of disability at issue here. A subsequent assessment by a DDS physician, in 2003, concluded that Webley suffered from only mild difficulties in maintaining concentration, persistence or pace, an opinion which the ALJ did mention.  In addition, in the summary section of the 1999 opinion, the DDS physician opined, "Due to his adjustment disorder he may have difficulty concentrating for extended periods and completing a workweek at a normal pace and without interruptions.  These problems are no[t] so severe as to prevent functioning in a work setting."  Tr. 625; see also Thomas v. Barnhart, 278 F.3d 947 (9ᵗʰ Cir. 2002) (marked limitation in ability to concentrate not inconsistent with VE testimony that claimant could perform unskilled job).  Any error in failing to discuss this evidence was harmless as it was not relevant to the time of disability.

C.      Dr. Carpenter

Webley argues the ALJ improperly rejected Dr. Carpenter's opinion, choosing instead to accept the opinions of the DDS reviewers and Dr. Brischetto.  The ALJ also rejected Dr. Carpenter's opinion because he is not a mental health specialist, but Webley argues that general practitioners may provide opinions on mental impairments.

Dr. Carpenter opined that plaintiff was limited to sedentary work and a job that did not require "considerable cognitive abilities."  Tr. 22.  This opinion was issued two months after the first ALJ issued a decision finding Webley not disabled, and over a year after Dr. Carpenter's last visit with Webley for a condition not associated with chronic fatigue.

The ALJ concluded Dr. Carpenter's opinion was not consistent with Dr. Carpenter's own treatment notes in which he remarked that plaintiff had passed with "flying colors" the cognitive and memory testing administered by Dr. Azzendine.  Tr. 25.  A contradiction between a doctor's

opinion and his recorded observations and opinions is a "clear and convincing reason for not relying on the doctor's opinion[.]"  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

In addition, Dr. Carpenter's opinion was contrary to the plaintiff's abilities.  Dr. Carpenter concluded that plaintiff could do a sedentary job, but he thought plaintiff would not be able to "learn the complexities of a job, i.e., computers."  Tr. 22.  The evidence demonstrated, however, that Webley used the computer frequently–he spent hours on the Internet researching chronic fatigue syndrome and ADHD, and other topics of interest, and used the calendar function on the computer to keep track of his daily schedule.

The ALJ also rejected Dr. Carpenter's opinion that plaintiff was limited to a sedentary job due to his chronic fatigue syndrome.  The ALJ noted, "a true snapshot of the claimant's symptoms only indicate some fatigue and there is no evidence that a medical diagnosis of chronic fatigue syndrome is warranted as noted by State Agency medical examiners."  Tr. 24.  As noted above, Webley's activities are not consistent with chronic fatigue.  Dr. Carpenter's continuous references to fatigue and chronic fatigue syndrome are based on plaintiff's self-reporting, and that account has been properly discredited by the ALJ.

Indeed, plaintiff himself reported that he had diagnosed himself with chronic fatigue.  Tr. 256.  The State agency physician determined that the brain MRI did not support a diagnosis of chronic fatigue syndrome.  This was supported by Webley who reported to Dr. Brischetto that the MRI scans were "almost normal," and "weren't a concern to his doctor."  Tr. 257.  The ALJ concluded that Dr. Carpenter's opinion was not supported by the medical evidence.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

Page 17 - OPINION AND ORDER

Finally, buried within the ALJ's analysis, he made the statement that Dr. Carpenter is not a mental health professional. As a "duly licensed physician," however, Dr. Carpenter "can practice and render psychiatric services" that may constitute "competent psychiatric evidence[.]" Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). This is not a clear and convincing reason to reject Dr. Carpenter's opinion.

In sum, all but one of the reasons given by the ALJ are supported by substantial evidence in the record. Therefore, I find that the ALJ properly rejected Dr. Carpenter's opinion.

V.      VE's Testimony

Webley alleges the VE gave testimony that was inconsistent with the Dictionary of Occupational Titles, and provided incorrect information regarding Webley's past work. In addition, plaintiff argues the ALJ made an impermissible finding that Webley could perform part of his previous job–the least demanding part–based on transferable skills.

The VE testified that plaintiff's past relevant work was as a sales representative and sales manager, DOT code number 274.357-010 and SVP level 7. That code number is for a different job–Sales Representative, Abrasives, SVP level 6. Although the VE gave the incorrect DOT number for plaintiff's past relevant work, she accurately described the work, and its SVP level 7. (DOT 185.167-042, Manager, Professional Equipment Sales and Service, SVP level 7.) Her error in identifying the correct DOT code number is not sufficient to bring into question her assessment of the number of such jobs in the national and local economies. The job requires sitting most of the time with some walking or standing, and exerting up to ten pounds of force occasionally. Webley's RFC requires him to lift and carry 20 pounds occasionally, 10 pounds

frequently, sit six of eight hours or stand and/or walk six of eight hours.  The VE testified that a person with Webley's RFC could do this job, and that testimony is supported by the record.

As for Webley's argument that the ALJ impermissibly found plaintiff could perform part of his previous job, I do not see a basis for the argument.  The ALJ stated:

> The evidence in this case establishes that the claimant has past relevant work as a salesman.  The impartial vocational expert testified that based upon the claimant's residual functional capacity, the claimant could return to his past relevant work as salesman performed by the claimant.  The vocational expert further testified that the claimant has transferable skills to other sales jobs that require a more minimal SVP.  In the alternative that the claimant is unable to return to his past relevant work as a salesman, the vocational expert testified that with his transferable job skills, he could also perform the work of a sales representative of industrial machinery which is a light, semi-skilled job of which there are 50,000 such jobs in the national economy and 700 to 800 jobs in the region.

Tr. 25.

The VE testified that plaintiff's transferable skills include "addressing customers' issues, . . . cold calling, dealing with customers, explaining merchandise, . . . keeping records and reports . . . , schedule appointments . . . ."  Tr. 334.  The ALJ properly relied on this testimony and concluded that plaintiff could perform his past relevant work or other work existing in the national economy.

///

///

///

Page 19 - OPINION AND ORDER

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this _____4th_____ day of September, 2008.

_____/s/ Garr M. King_____
Garr M. King
United States District Judge